**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SONOPRESS GMBH,

               Plaintiff,

      -against-

METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC,

             Defendant.

Civil Action No. 07 Civ 3752 (LTS)

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

 

O'MELVENY & MYERS LLP

Daniel M. Petrocelli (DP-1467) (*pro hac vice*
pending)
Claudia Ray (CR-4132)
Lee K. Fink (LF-5489) (*pro hac vice* pending)
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

*Attorneys for Defendant*
METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC

Dated: June 14, 2007

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 2

    The Arvato Agreement ............................................................................................ 2

    The Sonopress Agreement ...................................................................................... 3

    The Shortfall Amount ............................................................................................. 3

    Sonopress's Right to Match Competitor Bids ........................................................ 5

    The Cinram Agreement .......................................................................................... 5

ARGUMENT .................................................................................................................. 6

I.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE
SONOPRESS'S OWN ALLEGATIONS SHOW THAT THERE HAS BEEN NO
BREACH ........................................................................................................................ 6

    A.    Sonopress's Contract Claims Against MGM should be Dismissed Because
MGM Has Neither Breached Nor Repudiated the Sonopress Agreement ............ 7

        1.    The Exclusive Replication Agreement With Cinram Is Not A
Breach MGM's Obligations Under The Sonopress Agreement ................ 7

        2.    MGM Did Not Breach Nor Repudiate The Sonopress Agreement
Because It Retains The Option of Paying the Shortfall Amount .............. 8

        3.    MGM Has Never Declared Any Intention Not To Fulfill Its
Obligations Under The Sonopress Agreement ...................................... 10

    B.    Sonopress's Claim For Indemnification Should Be Dismissed Because It
Is Not Liable To Any Third Party As A Result Of MGM's Actions ................. 11

    C.    Sonopress's Request For Declaratory Judgment Must Be Denied Because
There Is No Actual Controversy Between The Parties ...................................... 12

II.    CONCLUSION ...................................................................................................... 12

## TABLE OF AUTHORITIES

**Page**

### CASES

*Bradford v. New York Times Co.*,
   501 F.2d 51 (2d Cir. 1974) ...................................................................................9

*Burger King Corp. v. Weaver*,
   169 F.3d 1310 (11th Cir. 1999) ...........................................................................8

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147, 153 & n.3 (2d Cir. 2002) ..............................................................3

*Dresser-Rand Co. v. Virtual Automation Inc.*,
   361 F.3d 831 (5th Cir. 2001) ...............................................................................9

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
   472 F.3d 23 (2d Cir. 2006) ..................................................................................6

*Golden v. Zwickler*,
   394 U.S. 103, 89 S. Ct. 956, 22 L.Ed.2d 113 (1969).........................................14

*Hasbrouck v. Van Winkle*,
   261 A.D. 679, 27 N.Y.S.2d 72 (1941) ...............................................................10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................2

*Integrated Micro Systems, Inc. v. NEC Home Electronics (USA), Inc.*,
   174 Ga. App. 197, 329 S.E.2d 554 (1985) .........................................................8

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) ..............................................................................13

*Lucente v. International Business Machines Corp.*,
   310 F.3d 243 (2d Cir. 2002) ..............................................................................11

*McDermott v. City of New York*,
   50 N.Y.2d 211, 428 N.Y.S.2d 643 (1980) ........................................................12

*Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*,
   92 N.Y.2d 458, 682 N.Y.S.2d 664 (1998) ........................................................11

*Northwestern Mut. Life Ins. Co. v. Uniondale Realty Associates*,
   11 Misc.3d 980, 816 N.Y.S.2d 831 (2006) .......................................................10

*Payne v. McDonald's Corp.*,
   957 F. Supp. 749 (D.Md. 1997)...........................................................................8

*Silverman v. Carvel Corp.*,
   8 A.D.3d 469, 778 N.Y.S.2d 515 (2004).........................................................7, 8

*Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*,
   146 Wis.2d 568, 431 N.W.2d 721 (1988) ...........................................................8

*Yak v. Bank Brussels Lambert*,
   252 F.3d 127, 130 (2d Cir. 2001) ........................................................................2

### STATUTES AND REGULATIONS

28 U.S.C. § 2201 ......................................................................................................12

30 *Williston on Contracts* § 77:108 (4th ed. 2006) ..................................................9

*Restatement (First) of Restitution* § 76..............................................................11, 12

Defendant Metro-Goldwyn-Mayer Home Entertainment LLC ("MGM"), by its attorneys O'Melveny & Myers LLP, respectfully submits this Memorandum of Law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), to dismiss the Complaint by Plaintiff Sonopress GmbH's ("Sonopress") in its entirety for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT.

Put simply, in bringing this lawsuit Sonopress is seeking to transform its ***non-exclusive*** DVD replication agreement with MGM, the home video arm of one of the largest and most well-known motion picture distributors in the world, into an *exclusive* contract by forcing MGM to give up its right to contract with other parties for the same DVD replication services. As Sonopress admits in the Complaint, however, the parties' agreement by its own terms is explicitly *non-exclusive*. Nevertheless, Sonopress asserts that because MGM entered into an agreement whereby another entity—Cinram, International, Inc. ("Cinram")—agreed to provide DVD replication services for MGM in a single territory, Western Europe, MGM has breached its contract with Sonopress. The Court should reject Sonopress's attempt to gain through litigation the exclusivity that it was unable to gain through negotiation.

Nor are Sonopress's remaining allegations any more compelling. Its claim that MGM has anticipatorily breached its contractual obligations are belied by the Complaint itself, which repeatedly states that MGM has informed Sonopress it will live up to its contractual commitments, either by ordering up to 120 million DVD units from Sonopress or alternatively paying Sonopress €0.09 for each unit less than 120 million that it ordered, an option explicitly granted to MGM under the parties' agreement.

Because the plain language of the Complaint demonstrates that MGM has not breached

the parties' agreement, the Court should dismiss Sonopress's claims in their entirety.

## BACKGROUND.[1]

The Arvato Agreement.

In August 2004, MGM entered into a distribution services agreement with arvato

distribution GmbH ("Arvato"), a corporate affiliate of Sonopress. (Compl. ¶ 8.)[2]  In 2005 MGM

was reorganized as a result of the purchase of its parent company (Metro-Goldwyn-Mayer) by a

consortium that included Sony Corporation ("Sony"). (Compl. ¶ 9.) As a consequence of this

reorganization, certain of MGM's home video distribution services were to be handled by Sony.

(Compl. ¶ 9.) Because of this change in MGM's distribution needs, the parties began exploring

options for terminating the agreement with Arvato (the "Arvato Agreement"). (Compl. ¶ 10.)

Arvato believed that in the event of termination it would be entitled to compensation under the

Arvato Agreement of €7 to 14 Million, whereas MGM believed €7-9 Million was a more

realistic figure. (Compl. ¶ 10.) MGM discussed with Sonopress three possible ways to resolve

this issue -- (i) an immediate cash payment to Arvato, (ii) continuing to do business with Arvato

or (iii) replacing the Arvato Agreement with a new agreement with Sonopress for DVD

replication services for 120 million DVD units. (Compl. ¶¶ 10-11.) MGM ultimately settled on

the third option and entered into a new agreement with Sonopress (the "Sonopress Agreement")

that "'includes a compensation element of 0.09 Euro per disc to offset the early termination costs

of the distribution agreement with arvato'" as well granting MGM the option of paying the

---

[1]  The facts set forth herein are taken from the Complaint and documents incorporated by reference or relied upon therein. *See Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part, rev'd in part on other grounds*, 396 F.3d 161 (2d Cir), cert. denied, 126 S. Ct. 421 (2005).  They are presumed to be true solely for the purpose of this motion.

[2] Both Sonopress and Arvato are a part of the Bertelesmann AG family of companies.

compensation of €0.09 per unit after the first 20 million units should MGM fail to order the full 120 million DVD units, which amount Sonopress would pass through to Arvato as compensation. (Compl. ¶¶ 12-13.) The new replication agreement with Sonopress was intended to ensure that Arvato would receive "the full 9 Million Euro DSA cancellation fee by providing that MGM would have to pay Sonopress 0.09 Euro for each DVD unit" in the event it ordered less than the full 120 million DVD units. (Compl. ¶ 18.)[3]

The Sonopress Agreement.

In May 2005, MGM entered into a ***non-exclusive*** DVD replication agreement (the "Sonopress Agreement") with Sonopress whereby Sonopress would be available to replicate and package up to 120 million DVD units for MGM in various territories throughout the world at a fixed price. (Compl. ¶ 14: Decl. of Claudia Ray,, Ex. A (the "Sonopress Agreement") at ¶¶ 1-2.)[4] The Sonopress Agreement has a term of five years, with an option for MGM to extend the agreement for a sixth year if it has not ordered the full 120 million DVD units (defined in the Sonopress Agreement as the "Guaranteed Quantity") within the original five year term. (Sonopress Agreement at 2 ¶ 2.)

The Shortfall Amount.

At the time they entered into the Sonopress Agreement, both parties recognized the possibility that MGM might not order all 120 million DVD units from Sonopress, although MGM thought this possibility was "unlikely." (Compl. ¶ 12.) To deal with this possibility, the parties expressly gave MGM the option *not* to order 120 million DVD units from Sonopress.

---

[3] In fact, the Sonopress Agreement contains a guarantee of 120 million DVDs, or €0.09 per DVD, or €10.8 Million, rather than the €9 Million referenced in the Complaint.

[4] The Court may consider the Sonopress Agreement in the context of MGM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because as the contract on which the Complaint is premised, it is a document "either in plaintiffs' possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002).

(Compl. ¶ 18; Sonopress Agreement at ¶ 2.) Specifically, the Sonopress Agreement provides that if, at the end of the five year term, MGM has not ordered 120 million DVD units from Sonopress, it "shall have the option" of either (i) extending the Sonopress Agreement for a sixth year or (ii) paying Sonopress €0.09 for each unit less than the Guaranteed Quantity of 120 million units that it ordered—an amount defined in the Sonopress Agreement as the "Shortfall Amount." ( Sonopress Agreement at ¶ 2.) In essence, at the end of the five year term MGM can either pay the Shortfall Amount or conclude that it needs another year in which to order the full Guaranteed Quantity.

The Sonopress Agreement recognizes that even if MGM does choose to extend the Sonopress Agreement for a sixth year (through 2010), MGM may still not end up ordering the full Guaranteed Quantity. In that case MGM's only obligation would be to pay the Shortfall Amount owed as of the end of the fifth year. ( Sonopress Agreement at ¶ 2.) Thus, under the Sonopress Agreement the most Sonopress is entitled to at the end of the Sonopress Agreement is either (i) orders totaling the Guaranteed Quantity or (ii) payment of the Shortfall Amount (which if MGM ordered no units at all would be €10.8 Million), and nothing more. (Sonopress Agreement at ¶ 2.)

The Sonopress Agreement included reciprocal indemnification clauses, wherein each party agreed to "indemnify, defend, and save harmless [the other] from and against any and all costs, claims, causes of action, suits, judgments, harm, damages, liabilities losses and expenses. . . ." caused by the other. (Sonopress Agreement ¶ 15(a)-(b).)

Sonopress's Right to Match Competitor Bids.

Under the Sonopress Agreement, MGM had the right once each year to seek a competing bid for the *entire* remaining Guaranteed Quantity at the time of the bid. (Sonopress Agreement

at ¶ 5(c).)  If the competing bid offered MGM a price reduction of more than €0.09 per unit, Sonopress would be required on an ongoing basis to lower its price per unit to the amount of the bid plus €0.09 per unit (subject to an agreed-upon price per unit floor set forth in the Sonopress Agreement).  (Compl. ¶ 17; Sonopress Agreement at 3 ¶ 5(c).)  This assured the only guarantee to Sonopress in the Sonopress Agreement—that Sonopress/Arvato would received a €0.09 per DVD unit compensation element for the early termination of the Arvato Agreement.  The competing bid provision does not affect MGM's obligation to order the entire Guaranteed Quantity or pay the Shortfall Amount.  (Compl. ¶ 17.)  Nowhere does Sonopress allege any breach of this provision.

The Cinram Agreement.

In February 2007, Cinram International, Inc. ("Cinram") announced that it had entered into an agreement with MGM to provide DVD replication services to MGM on an exclusive basis in Western Europe.  (Compl. ¶ 19.)  Because the Sonopress Agreement is expressly *non-exclusive*, nothing in that agreement prohibited MGM from contracting with Cinram or any other third party in order to meet its needs for replication services anywhere in the world during the term of the Agreement.  (Compl. ¶ 14; Sonopress Agreement at 2 ¶ 4.)[5]

At no time did MGM ever indicate to Sonopress that it was repudiating the Sonopress Agreement.  In fact, as Sonopress itself alleges, in a February 7, 2007 letter MGM told Sonopress that it was "committed to fulfilling its obligations under the Agreement. . . .." (*See* Compl. ¶ 22.)  Notwithstanding these assurances, on May 11, 2007 Sonopress filed its Complaint alleging claims for breach of contract and anticipatory breach of contract.  Although it does not

---

[5] While not contained in the Complaint, the facts will show that Sonopress was aware that MGM had exclusive replication agreements in several territories at the time the parties entered into the Sonopress Agreement, including for Western Europe.

allege that it has incurred any liability to any third party, Sonopress also seeks indemnification under the Sonopress Agreement, as well as declaratory relief.

## ARGUMENT.

### I. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE SONOPRESS'S OWN ALLEGATIONS SHOW THAT THERE HAS BEEN NO BREACH.

Under Federal Rule of Civil Procedure 12(b)(6), where a plaintiff cannot prove any set of facts consistent with his complaint that would entitle him to relief, his claims must be dismissed. *See, e.g., E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 28 (2d Cir. 2006). Here, even accepting all of Sonopress's allegations as true, there has been no breach of the Sonopress Agreement. The most that Sonopress alleges is that MGM has not yet, in the third year of a five (or six) year agreement, either ordered the full Guaranteed Quantity or paid the Shortfall Amount. (Compl. ¶¶ 27, 28, 32, 35.) Under the express terms of the Sonopress Agreement, however, MGM has until December 31, 2010 to meet one or the other of these requirements. Nor does the MGM's decision to enter into the Cinram Agreement violate any provision of the Sonopress Agreement, which is unambiguously non-exclusive. That MGM has entered into replication agreements with competitors is irrelevant. Nor has Sonopress identified any statement or action by MGM that could possibly be interpreted as a definitive repudiation of the Sonopress Agreement. Sonopress's causes of action for indemnification and declaratory judgment are also meritless—there is no third party against whom MGM must indemnify Sonopress, and there is no threat of litigation requiring a declaration of the parties' rights and responsibilities. Because Sonopress's own allegations demonstrate its inability to state any claim on which relief could be granted, the Complaint must be dismissed in its entirety.

6

**A.    Sonopress's Contract Claims Against MGM should be Dismissed Because <u>MGM Has Neither Breached Nor Repudiated the Sonopress Agreement.</u>**

Counts I and II of Sonopress's Complaint both sound in contract, either for breach or anticipatory breach, and are both premised on the same facts—that MGM entered into an exclusive replication agreement in Western Europe with Cinram, that it removed DVD masters from Sonopress's possession, and that it informed Sonopress that it did not expect to purchase additional DVD units from Sonopress during 2007. (Compl. ¶¶ 19, 27, 28, 32, 35.)

**1.    The Exclusive Replication Agreement With Cinram Is Not A Breach <u>MGM's Obligations Under The Sonopress Agreement.</u>**

Sonopress claims that MGM's agreement with Cinram for replication services in Western Europe breached the Sonopress Agreement. Yet Sonopress expressly admits, as it must, that the Sonopress Agreement was non-exclusive. (Compl. ¶ 14.) Under New York law, a non-exclusive license cannot be breached by granting others a license to provide similar services. For example, in *Silverman v. Carvel Corp.*, 8 A.D.3d 469, 778 N.Y.S.2d 515 (2004), the Second Department held that a Carvel franchisee not have a claim for breach of contract or the implied covenant of good faith against the company for allowing the distribution of Carvel products in supermarkets and convenience stores. The franchise agreement gave Silverman a quarter-mile exclusive area for a Carvel store, but did not grant any exclusive rights to sell within supermarkets. *Id.* at 470, 778 N.Y.S.2d at 516. Because the complaint did not allege any that Carvel had established any free-standing store within the quarter-mile area of exclusivity, and the plaintiff could point to nothing in the agreement prohibiting plaintiff from selling products through supermarket and convenience stores, the court dismissed the action. *Id.*

Other courts across the country have reached the same conclusion. *See, e.g., Integrated Micro Systems, Inc. v. NEC Home Electronics (USA), Inc.*, 174 Ga. App. 197, 329 S.E.2d 554 (1985) (finding that it was not a breach of a non-exclusive dealership agreement for a computer

7

manufacturer to directly sell computers to a prospective customer of its authorized dealer); *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis.2d 568, 431 N.W.2d 721 (1988) (franchisor's decision to grant another franchise in the same city as franchisee was not a breach of the franchise agreement or the implied covenant of good faith and fair dealing, where the franchise agreement was not exclusive); *Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999) (same); *Payne v. McDonald's Corp.*, 957 F. Supp. 749 (D.Md. 1997) (same).[6]

Here, Sonopress has not alleged that any provision of the Sonopress Agreement limits MGM's right to license other DVD replication services on nor can it do so. Because MGM has not violated any provisions of the Sonopress Agreement, Count I must be dismissed in its entirety.

### 2.    MGM Did Not Breach Nor Repudiate The Sonopress Agreement Because It Retains The Option of Paying the Shortfall Amount.

Even if the Cinram Agreement made it impossible for Sonopress to replicate *any* DVDs for MGM under the Sonopress Agreement, which it did not, MGM would still not have breached that agreement because it would still retain the option of simply paying the Shortfall Amount at the end of five years (or six years if it exercised its option to extend the agreement for another year).

Under New York law, a contract may "truly provide one of the parties the alternative of one performance or another." *Bradford v. New York Times Co.*, 501 F.2d 51, 56 (2d Cir. 1974);

---

[6] Sonopress alleges that the exclusive agreement with Cinram "decimates" its worldwide market, implicitly asserting that MGM was not party to any exclusive agreement for DVD replication services in Europe with any other entity at the time the parties entered into the Sonopress Agreement. Even if that implicit assertion were true, there can be no liability for the breach of a non-exclusive agreement based on the execution of an exclusive agreement with a third party unless the two agreements are completely irreconcilable. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 846 (5th Cir. 2001). That is plainly not the case here, where Sonopress has failed to allege that MGM's agreement with Cinram deprived it of its entire territory. In fact, Sonopress cannot deny that despite the agreement with Cinram regarding Western Europe, where Sonopress's rights were at best non-exclusive, numerous other territories remain wholly available to it during the remaining term of the Sonopress Agreement.

*see, e.g.,* 30 *Williston on Contracts* § 77:108 (4th ed. 2006). As the New York Court of Appeals

has noted,

> [w]here the agreement of the promisor is to do a certain thing or in
> default thereof to pay a certain sum of money, our courts, on his
> failure to do the particular thing, consider him as having had his
> election, and hold him liable to pay the agreed sum of money. This
> form of contract, while approaching very near to a stipulation for a
> penalty for nonperformance, is distinguishable therefrom and
> enforced according to its terms, and is considered as giving the
> promisor the election to refuse to do the act and in lieu thereof to
> pay the amount agreed.

*Hasbrouck v. Van Winkle,* 261 A.D. 679, 682, 27 N.Y.S.2d 72, 76 (1941). When a contract

provides for the option of alternative performance, performance of one of the alternatives is not a

breach of the contract. *See Hasbrouck,* 261 A.D. at 683; 27 N.Y.S.2d 76.

The use of alternative performance options is commonplace in contracts. For example, a

pre-payment "penalty" for a mortgage loan is viewed not as an illegal penalty, but rather as an

alternative means of performance intended to compensate a lender for interest earnings that it

would have received had the lender paid the mortgage over the time specified in the agreement.

*Id.*; *Northwestern Mut. Life Ins. Co. v. Uniondale Realty Associates,* 11 Misc.3d 980, 816

N.Y.S.2d 831 (2006).

Here, the Sonopress Agreement expressly granted MGM the option of choosing between

two alternate means of performance. It can order the full Guaranteed Quantity by December 31,

2010, or it can pay the Shortfall Amount as of December 31, 2009. (Sonopress Agreement at

¶ 2.) This provision is not included as a liquidated damages clause, but simply as a formula for

determining the amount of the Shortfall Amount should MGM chose that alternative. (Sonpress

Agreement at ¶ 2.) Furthermore, under the terms of the Sonopress Agreement, MGM has more

than two years before it has to notify Sonopress as to which alternative performance it has

chosen. (Sonopress Agreement at ¶ 2.) Given that provision, MGM cannot be said to have breached the Sonopress Agreement either by entering into the agreement with Cinram or telling Sonopress that it did not plan to order any units in 2007.

3.    **MGM Has Never Declared Any Intention Not To Fulfill Its Obligations Under The Sonopress Agreement.**

Anticipatory breach of contract occurs only when a party declares its intention not to fulfill a contractual duty sometime before the time of performance. *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Such a statement of intent must be unequivocal in order to constitute an anticipatory breach. *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 462, 682 N.Y.S.2d 664, 667 (1998).

Here, Sonopress has failed to even allege such a statement by MGM. To the contrary, Sonopress admits that MGM told Sonopress that it "is committed to fulfilling its obligations under the Agreement, and we look forward to continuing our partnership with you into the future." (Compl. ¶ 22.) At most Sonopress has alleged that MGM told Sonopress it did not forecast any needs for "*this year*" (i.e., 2007). (Compl. ¶ 25 (emphasis added).) Sonopress has not alleged *any* statements by MGM regarding its replication needs for the remaining two or—at MGM's option—three years of the term of the Sonopress Agreement, nor can it make such an allegation without violating its obligations under Rule 11 of the Federal Rules of Civil Procedure.

Under the Sonopress Agreement, the most MGM is required to do is provide its forecasted volume over a rolling 12 month period in order to "ensure that Sonopress has sufficient capacity to meet MGM's requirement[s]." (Sonopress Agreement at ¶ 4(c).) Sonopress's assertion that MGM anticipatorily repudiated the Sonopress Agreement by "informing Plaintiff that MGM did not expect to purchase any additional DVD units" (Compl. ¶

10

35) is flatly contradicted by its own admission that MGM only told Sonopress that this

expectation applied only to *2007*. (Compl. ¶ 27.)  MGM has three years—2008, 2009, and

2010—in which to complete its performance under the Sonopress Agreement.  (Sonopress

Agreement at. ¶ 2.)  Given that fact, any statement by MGM regarding its needs for DVD

replication from Sonopress in *2007* has no bearing on whether MGM will either order the full

Guaranteed Quantity or pay the Shortfall Amount by December 31, *2010*, and cannot support a

claim for breach of the Sonopress Agreement.

**B.**    **Sonopress's Claim For Indemnification Should Be Dismissed Because It Is Not Liable To Any Third Party As A Result Of MGM's Actions.**

In Count III of the Complaint Sonopress also seeks indemnification under ¶ 15(b) of the

Sonopress Agreement (Compl. ¶¶ 37-40), pursuant to which MGM agrees to "indemnify, defend,

and save harmless Sonopress from and against any and all costs, claims, causes of action, suits,

judgments, harm, damages, liabilities losses and expenses. . .." (Sonopress Agreement at ¶

15(b).)  Under New York law, a claim for indemnification only arises when a party is held liable

for the actions of a third party. *McDermott v. City of New York*, 50 N.Y.2d 211, 218, 428

N.Y.S.2d 643, 647 n.4 (1980); *see also Restatement (First) of Restitution* § 76.  "Thus, if the

owner of a building is forced to respond in damages for injuries caused by a service contractor's

breach of contract, the owner is entitled to be indemnified by the contractor." *Id.*

Here, Sonopress does not allege that has been held liable to, or even sued by, any third

party in connection with the Sonopress Agreement.  Instead, Sonopress simply repeats its same

allegations regarding the Cinram Agreement, in what can only be considered a transparent

attempt to transform its breach of contract claim into one that can support an award of attorneys'

fees.  The absence of any allegation that Sonopress has become liable to some third party as a

result of MGM's actions is clearly fatal to Sonopress's indemnity claim, which must therefore be dismissed. *See Restatement (First) of Restitution* § 76, cmt. b.

**C.    Sonopress's Request For Declaratory Judgment Must Be Denied Because There Is No Actual Controversy Between The Parties.**

Count IV of the Complaint seeks declaratory relief based on the same allegations offered in support of its contract claims—MGM's supposed assertion that it is not required to either order the Guaranteed Quantity or pay the Shortfall Amount. (Compl. ¶¶ 41-44.) This claim must be denied because there is no actual controversy between the parties sufficient to meet the threshold requirements under the Declaratory Judgment Act, 28 U.S.C. § 2201.

In order to obtain a declaratory judgment, a plaintiff must demonstrate "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959-60, 22 L.Ed.2d 113 (1969).

Here, the failure of Sonopress's breach of contract claims is fatal to its claim for declaratory relied. MGM's performance under the Sonopress Agreement is not due until at least December 31, 2009 (and may be extended a further year at MGM's option). Any declaration of the parties' rights under the contract clearly would be an improper advisory opinion, and should therefore be denied.[7] *Golden*, 394 U.S. at 108, 89 S. Ct. at 959, 22 L.Ed.2d at 117 ("The federal courts established pursuant to Article III of the Constitution do not render advisory opinions.")

**II.    CONCLUSION.**

Because Sonopress has failed to allege any facts supporting its claims for breach of contract, anticipatory breach, indemnification and declaratory judgment, and cannot do so given

---

[7] Naturally, if the Court were to give Sonopress relief under its breach of contract claims, there would be no need for the declaratory judgment, and it is therefore equally superfluous.

MGM 's express contractual right, at its sole option, to wait until December 31, 2010, to either order the Guaranteed Quantity or pay the Shortfall Amount, MGM's motion to dismiss the Complaint should be granted with prejudice.

Dated: June 14, 2007

Respectfully submitted:

O'MELVENY & MYERS LLP

Daniel M. Petrocelli (DP-1467)
Claudia Ray (CR-4132)
Lee K. Fink (LF-5489)
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

*Attorneys for Defendant*
METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC

13