Alan Kanzer (AK 5839)
Amber C. Wessels (AW 2322)
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400

*Attorneys for Plaintiff Sonopress GmbH*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SONOPRESS GmbH, | Civil Action No. 07 Civ 3752 (LTS) |
| Plaintiff, | |
| v. | **DECLARATION OF AMBER C. WESSELS IN SUPPORT OF PLAINTIFF'S CONDITIONAL CROSS-MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT** |
| METRO-GOLDWYN-MAYER HOME ENTERTAINMENT LLC, | |
| Defendant. | |

---

AMBER C. WESSELS, ESQ. hereby declares as follows:

1. I am an attorney at the law firm of Alston & Bird LLP, resident in the firm's office located at 90 Park Avenue, New York, NY 10016. I am a member in good standing of the Bar of the State of New York, and am admitted to practice before this Court.

2. Pursuant to 28 U.S.C. §1746(2) and Local Civil Rule 1.10 of the Local Rules of the United States District Court for the Southern District of new York, I respectfully submit this declaration in support of Plaintiff Sonopress GmbH's Conditional Cross-Motion to File A First Amended Complaint.

3.  Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Proposed First Amended Complaint.

4.  Attached hereto as Exhibit B is a true and correct copy of a redline version of Plaintiff's Proposed First Amended Complaint.

5.  Plaintiff's Proposed First Amended Complaint Differs from Plaintiff's Complaint dated May 11, 2007 in the following material respects:

(a)  Paragraph 19 has been added. It alleges that the Replication Agreement, including the ambiguous provisions of the Agreement that are at issue in this litigation, was drafted in whole or in substantial part by MGM. The Agreement furthermore does not purport to abrogate the canon of construction that any ambiguities in a contract will be construed against the interests of the draftsman.

(b)  Paragraph 20 has been added. It alleges that, while MGM and Sonopress were negotiating the Replication Agreement, MGM simultaneously negotiated with arvato distribution an agreement terminating the DSA. This agreement was also drafted in whole or in substantial part by MGM, and it contained a condition precedent – that MGM and Sonopress would enter into "a non-exclusive worldwide replication agreement with a volume commitment of no less than 120 million discs."

(c)  Paragraph 21 has been added. It alleges that the agreement terminating the DSA did not grant MGM the "option" of satisfying this contractual obligation by agreeing to make a payment in lieu of ordering the required number of DVD discs.

(d)  Paragraph 22 has been amended to allege that MGM's exclusive multi-year replication agreement with Cinram covers the entire territory of Western Europe.

2

(e)     Paragraph 23 has been added. It alleges that, during the time MGM placed orders with Sonopress in 2005 and 2006 under the Replication Agreement, 96% of those orders were shipped to Western Europe. MGM's multi-year exclusive contract with Cinram therefore excluded Sonopress from its most important market for much (if not all) of the remaining term of the Replication Agreement.

(f)     Paragraph 31 has been amended to allege that MGM has falsely contended it can meet its contractual obligations by exercising an "option" to pay 0.09 Euro for each DVD unit MGM fails to order.

(g)     Paragraph 32 has been added. It alleges that at the time that MGM entered into the Replication Agreement, MGM was a party to exclusive replication agreements in multiple territories, including Western Europe. These exclusive replication agreements conflicted with Sonopress's worldwide territory. Paragraph 32 also alleges that MGM falsely represented, in Section 20 of the Replication Agreement, that by entering into that Agreement, MGM would not breach any obligations it had to third parties or require their consent to grant Sonopress a worldwide non-exclusive replication agreement.

(h)     Paragraph 33 has been added. It alleges that during the negotiation of the Replication Agreement, MGM representatives never informed Sonopress that MGM was a party to any exclusive replication agreements.

(i)     Paragraph 50 has been added. It alleges that Sonopress can not determine how to allocate its replication capacity among its customers, including MGM, and whether it needs to make capital expenditures to meet customer demand, if it will not learn until December 31, 2010 (a) whether it will receive any replication orders from MGM between now and the end of 2010 and, if so, (b) when and (c) for how many DVD units.

(j)     The various counts of the proposed First Amended Complaint incorporate the new factual allegations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 16, 2007

_____
Amber C. Wessels