UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONOPRESS GMBH,

        Plaintiff,

    -against-

METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC,

        Defendant.

Civil Action No. 07 Civ 3752 (LTS)

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S CONDITIONAL CROSS-MOTION FOR
LEAVE TO FILE A FIRST AMENDED COMPLAINT**

O'MELVENY & MYERS LLP

Daniel M. Petrocelli (DP-1467) (*pro hac vice*)
Claudia Ray (CR-4132)
Lee K. Fink (LF-5489) (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendant*
METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC

Dated: August 2, 2007

Defendant Metro-Goldwyn-Mayer Home Entertainment LLC ("MGM"), by its attorneys O'Melveny & Myers LLP, respectfully submits this Memorandum of Law in opposition to plaintiff's Sonopress GmbH's ("Sonopress") motion for leave to file a First Amended Complaint.  MGM also relies on its Memorandum of Law in Support of its Motion to Dismiss, and its Reply Memorandum of Law in Support of its Motion to Dismiss, to support its opposition to Sonopress's Conditional Motion for Leave to File an Amended Complaint.

## PRELIMINARY STATEMENT

Sonopress's conditional motion for leave to amend is a perfect demonstration of the futility of its complaint, and shows exactly why MGM's motion for dismiss should be granted *with prejudice*.

In Sonopress's original Complaint, it attempted to gain through litigation the exclusive contract that it was unable to secure through negotiations.  Sonopress concedes that its agreement to provide DVD replication services to MGM (the "Sonopress Agreement") was explicitly ***non-exclusive***.  Yet Sonopress nevertheless alleges that MGM breached that agreement by entering into a DVD replication agreement with a competitor, Cinram International, Inc. ("Cinram") in a single territory.  Sonopress should not be allowed to transform its contract into an exclusive contract.

Moreover, Sonopress's claim that MGM has anticipatorily breached its contractual obligations are belied by the Complaint itself, which repeatedly states that MGM has informed Sonopress it will live up to its contractual commitments, either by ordering up to 120 million DVD units from Sonopress or alternatively paying Sonopress €0.09 for each unit less than 120 million that it ordered, an option explicitly granted to MGM under the parties' agreement.  As set forth in its motion to dismiss, Sonopress's complaint must be dismissed.

In response to MGM's motion to dismiss, Sonopress filed the instant motion, seeking leave to file an amended complaint in the event that the Court grants MGM's motion to dismiss. Because even Sonopress's proposed amended complaint would not salvage its claims leave to amend should be denied. The substantive changes to Sonopress's complaint consist of allegations of its own purported intent when it entered into the Sonopress Agreement, which is inadmissible under the parol evidence rule. The other proposed changes include re-stating facts that are not materially different from those in the original complaint, or facts that do not change the basic premise of MGM's motion to dismiss—that MGM did not breach the explicitly ***non-exclusive*** replication agreement with Sonopress by entering into agreements with other DVD replicators.

## ARGUMENT

As Sonopress sets forth in its Conditional Motion for Leave to File an Amended Complaint, leave to amend may be granted unless the amended complaint would not itself withstand a motion to dismiss. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Kaster v. Modificaiton Systems, Inc.*, 731 F.2d 1014, 1018-19 (2d Cir. 1984). Here, Sonopress sets forth a discrete universe of amendments to its complaint. (Opp. to Mot. to Dismiss. at 19-20.) None of those amendments, however, would change the result of MGM's motion to dismiss. MGM deals with each new allegation seriatim (as set forth in Sonopress's opposition to MGM's motion to dismiss):

- "The ambiguous provisions of the Replication Agreement that are at issue in this litigation were drafted in whole or in substantial part by MGM. The Agreement furthermore contains no provision that the contract shall be considered to have been drafted by both parties."

This allegation assumes too much. Whether a contract provision is ambiguous is a matter of law for the court to decide. *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565

2

N.Y.S.2d 440, 443 (1990). As set forth in MGM's motion to dismiss, the relevant terms of the Sonopress Agreement are clear and unambiguous. Moreover, to the extent that there is any ambiguity, the facts alleged by Sonopress support ***MGM's*** interpretation of the Sonopress Agreement. Sonopress's allegations about the identify of the drafter, even if true, does not save its complaint from dismissal.

- *"The Replication Agreement was entered into in July 2005."*

Sonopress offers no explanation as to why the fact that the Sonopress Areement was entered into in July 2005—as opposed to May 2005 as originally alleged—would support its claims. In fact, this change is immaterial, as it does not affect the parties' obligations.

- *"At the time that MGM entered in the Replication Agreement, MGM representatives never informed Sonopress that MGM was a party to exclusive replication agreements."*

Sonopress offers no explanation as to why this supports its claim, or why MGM had any obligation to disclose such agreements in the context of an explicitly ***non-exclusive*** agreement. Moreover, this allegation strengthens MGM's arguments in its motion to dismiss, since MGM was, at the time the parties executed the Sonopress Agreement, a party to the very type of exclusive agreements that Sonopress claims now, two years later, constitute a breach of the Sonopress Agreement.

- *"During the negotiation of the Replication Agreement, MGM representatives never informed Sonorpress that MGM was a party to exclusive replication agreements."*

Aside from the fact that the allegation is inaccurate, it is immaterial. As MGM has painstakingly laid out in its motion to dismiss, MGM's entry into exclusive replication agreements in certain territories does not constitute a breach of the ***non-exclusive*** worldwide

3

Sonopress Agreement. Thus, the alleged fact that MGM had entered into replication agreements with other parties without Sonopress's knowledge is not actionable. Furthermore, Sonpress has not alleged any obligation to disclose these in the context of a negotiation to enter into a ***non-exclusive*** agreement.

If anything, the new facts that Sonopress seeks to allege—that MGM had exclusive replication agreements that Sonopress did not know about—only bolsters MGM's arguments. MGM believes that the facts will show that Sonopress did know of these agreements. But, if Sonopress truly was unaware of these other exclusive replication agreements, it becomes clear that such agreements do not harm Sonopress, as for two years, it had no complaints about the volume that it was replicating for MGM. Thus, the fact that MGM has again entered into exclusive agreements in certain territories should continue to have no effect on Sonopress.

- *"MGM and arvato distribution entered into a June 30, 2005 Amendment governing the early termination of the DSA. This Amendment, which was also drafted in whole or substantial part by MGM, contained the condition precedent that MGM and Sonopress would enter into a "non-exclusive worldwide replication agreement with a volume commitment of no less than 120 million discs."*

This allegation is not materially different from the allegation in paragraph 7 of Sonopress's original complaint that "[t]he [Sonopress] Agreement therefore provided a means for MGM to discount the damage payable to arvato distribution from 14 to 9 million Euro, and to repay the 9 million Euro in damages, 0.09 Euro per DVD unit at a time. . . ."[1]

In opposition to the motion to dismiss, Sonopress argued that the Shortfall Amount is only a "pass-through" to arvato, and therefore not an alternative means of performance. This argument is meritless. As explained in MGM's reply, the Sonopress Agreement serves as a

---

[1] Sonopress claims that this was a "discount." The reality is that Sonopress's complaint sets forth that there was a genuine dispute as the proper amount to pay arvato, and the parties reached a settlement.

4

novation of the Arvato Agreement.  *Callanan Industries, Inc. v. Micheli Contracting Corp.*, 124 A.D.2d 960, 962, 508 N.Y.S.2d 711, 712 (1986) ("A novation has four elements, each of which must be present in order to demonstrate novation: (1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract."); *see also May Dept. Stores Co. v. International Leasing Corp., Inc.*, 1 F.3d 138, 140 (2d Cir. 1993) ("a novation: an agreement for an existing obligation to be extinguished immediately by the acceptance of a new promise.")

      Here, there is no doubt that the whole purpose of the transaction which gave birth to the Sonopress Agreement was to extinguish MGM's obligations under the Arvato Agreement—indeed, the amendment that Sonopress references specifically states that Arvato "agreed to permit MGM to terminate the [Arvato Agreement] early on the condition that MGM enter into" the Sonopress Agreement.  (Declaration of Lee Fink, Ex. 1 [the "Arvato Amendment"] at 1.)  When it entered into the Arvato Amendment, arvato relinquished its rights against MGM.  *See Restatement (Second) of Contracts* § 280, cmt. b ("A novation discharges the original duty, just as any other substituted contract does, so that breach of the new duty gives no right of action on the old duty.")  Sonopress cannot now be heard to complain that it should be able to receive (on behalf of arvato) compensation for the early termination of the Arvato Agreement.  Sonopress (and arvato) received exactly what it bargained for—a promise to pay some €10.8 Million, either through paying a premium on DVDs that it orders or, alternatively, through payment of the Shortfall Amount.

- *"It was not the intent of the parties that MGM be granted an option to pay the Shortfall Amount in lieu of ordering the 120,000,000 DVD units. The Shortfall Amount is intended solely for the benefit of arvato distribution for the early termination of the DSA and does not provide any compensation to Sonopress for a failure by MGM to order the requisite number of DVD units."*

Sonopress's allegation that it "was not the intent of the parties that MGM be granted an option to pay the Shortfall Amount in lieu of ordering the 120,000,000 DVD units" directly contradicts the terms of the Sonopress Agreement, which states that, at the end of the term, "MGM *shall have the option* either (a) to pay the Shortfall Amount to Sonopress, or (b) to extend the Term to the earlier of December 31, 2010 and the date the Guaranteed Quantity shall have been replicated by Sonopress. . . ."  (Decl. of Claudia Ray, Ex. A (the "Sonopress Agreement") at ¶ 2 (emphasis added).)  The parol evidence rule prohibits Sonopress from relying on extrinsic evidence of intent to vary the terms of a contract where, as here, the agreement is fully integrated.  *Primex Intern. Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599-600, 657 N.Y.S.2d 385, 388 (1997).

- *"MGM's exclusive replication agreement with Cinram covers all of Western Europe."*

Sonopress's does not actually make this allegation in its proposed amended complaint.  Rather, the complaint alleges only that, in its motion to dismiss, MGM referred to the Cinram territory as "Western Europe," which Sonopress considered "more broad[]" than what was alleged in Sonopress's original complaint.  This reference by MGM was never intended to alter the facts alleged in Sonopress's complaint.  In any event, the allegation is not materially different from its prior allegation that MGM entered into an exclusive DVD replication agreement with Cinram for Western Europe.

6

- *"Sonopress can not determine how to allocate its replication capacity among its customers and whether it needs to make capital expenditures to meet customer demand if it will not learn until December 31, 2010 whether, when, and how many orders MGM may place for DVD replication by Sonopress."*

Whether or not the existence of the alleged uncertainty as to its future capacity needs presents some sort of hardship for Sonopress is beside the point. The Sonopress Agreement specifically states that "MGM shall inform Sonopress as to how it intends to exercise its **option** no later than October 31, 2009." (Sonopress Agreement ¶ 2 (emphasis added).) MGM is explicitly under no obligation to inform Sonopress of its plans any earlier than that date. Furthermore, the Sonopress Agreement states that MGM is only required to provide to Sonopress a "forecast of the anticipated" volume for a rolling 12-month period every six month. Thus, while Sonopress is not required to wait until December 31, 2010, it agreed to wait until at least October 31, 2009, and to accept any uncertainty that this might entail. It cannot now be heard to complain about the terms to which it explicitly agreed.

- *"96% of the orders that MGM placed with Sonopress in 2005 and 2006 were for Western Europe."*

Even if true, this allegation does not change the analysis as set forth in MGM's motion to dismiss. That MGM had previously placed DVD replication orders in a certain territory does not obligate it to continue to order DVDs from Sonopress in that territory. Moreover, as set forth above, MGM retains the option to pay the Shortfall Amount.

7

## **CONCLUSION**

For the reasons set forth above, and in MGM's Motion to Dismiss, Sonopress's motion for leave to file a first amended complain should be denied, and Sonopress's complaint should be dismissed with prejudice.

Dated: August 2, 2007

Respectfully submitted:

O'MELVENY & MYERS LLP

_/s/ Lee K. Fink_

Daniel M. Petrocelli (DP-1467)
Claudia Ray (CR-4132)
Lee K. Fink (LF-5489)
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendant*
METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC

CC1:768122