Alan Kanzer (AK 5839)
Amber C. Wessels (AW 2322)
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SONOPRESS GmbH, | Civil Action No. 07 Civ 3752 (LTS) |
| Plaintiff, | |
| v. | |
| METRO-GOLDWYN-MAYER HOME ENTERTAINMENT LLC, | |
| Defendant. | |

---

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF SONOPRESS'S CONDITIONAL MOTION
FOR LEAVE TO FILE AN AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

**PRELIMINARY STATEMENT** ...............................................................................................1

**ARGUMENT** ..............................................................................................................................2

    A.   The Grant to a Third Party of an Exclusive Right to Replicate MGM Movies Breached Sonopress's World-Wide Non-Exclusive Replication Agreement ........................................................................................................3

    B.   Interpretation of the Replication Agreement ............................................................7

    C.   The Existence of the Parties' Conflicting Interpretations of the Replication Agreement's Terms Also Evidences the Need for a Declaratory Judgment ............9

**CONCLUSION** ........................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Board of Regents of the University of Nebraska v. BASF Corp.*, No. 4:04 CV 3365,
      2006 WL 2583253 (D. Neb. Sept. 6, 2006)..................................................................5

*Dresser-Rand Co. v. Virtual Automation Inc*, 361 F.3d 831 (5th Cir. 2004)...................6

*Foman v. Davis*, 371 U.S. 178 (1962).................................................................................2

*Graphic Technology, Inc. v. Pitney Bowes Inc.*, 968 F. Supp. 602 (D. Kan. 1997).........5

*May Dept. Stores Co. v. International Leasing Corp., Inc.*, 1 F.3d 138 (2d Cir. 1993)...9

*Silverman v. Carvel Corp.*, 8 A.D.3d 469, 778 N.Y.S.2d 515 (2d Dept. 2004)...............4

*United Liquors, Inc. v. Carillon Importers, Ltd.* 893 F.2d 1 (1st Cir. 1989)....................5

**Other Authorities**

3 James Wm. Moore et al., *Moore's Federal Practice* (2007 Ed.) § 15.15[1].................2

*Restatement (Second) of Contracts* §206 (1981)...............................................................7

**PRELIMINARY STATEMENT**

Like an old phonograph record that is stuck in its groove, MGM repeats over and over its false accusation that Sonopress is seeking to transform a non-exclusive Replication Agreement into an exclusive contract. The simple point, which MGM persists in misperceiving, is that while MGM was free to grant Cinram a *non-exclusive* replication agreement in Western Europe, it is a clear breach of contract for MGM to have granted Cinram in 2007 an *exclusive* contract for that territory, because such a grant is inconsistent with, and a breach of, the earlier grant to Sonopress of *world-wide* replication rights.

Although Sonopress firmly believes that its existing complaint adequately alleges that MGM breached the Replication Agreement, the proposed Amended Complaint both adds additional information concerning the Cinram-related breach and also alleges, for the first time, an additional breach that Sonopress discovered upon reading MGM's opposition papers: MGM committed an independent breach of contract at the time it entered into the Replication Agreement by misrepresenting that there were no pre-existing exclusive replication agreements. These new allegations are material, since the proposed Amended Complaint also contains the new allegation that Western Europe (the territory of Cinram's exclusive contract) is the situs for approximately 96% of the replication orders that Sonopress received from MGM during the first two years of the Replication Agreement.

Thus Sonopress and MGM agree that at the heart of their dispute is the issue of whether an exclusive and a non-exclusive replication agreement for overlapping

territories can co-exist, but reach the opposite conclusions on that critical question. Unless this Court concludes that as a matter of law the grant and non-disclosure of such inconsistent contracts can never constitute a breach of contract, Sonopress respectfully submits that the Court can not hold that the proposed Amended Complaint would be "futile".

## ARGUMENT

Under Rule 15(a) of the Federal Rules of Civil Procedure, amendments of pleadings are to be liberally permitted. The only circumstances in which a request may properly be denied are (i) if the amendment would cause undue prejudice to the defendant, (ii) if the movant has delayed too long in making the motion, or (iii) if the amendment would be "futile". *See Foman v. Davis,* 371 U.S. 178 (1962); 3 James Wm. Moore et al., *Moore's Federal Practice* (2007 Ed.) § 15.15[1] . Here the only basis for MGM's challenge is "futility", which is inapplicable since the proposed Amended Complaint not only cures any purported flaws in the original complaint; it also sets forth a new, independent breach of contract, based on MGM's own admissions in its motion papers.

The changes that the proposed Amended Complaint contains are set forth in the Wessels declaration filed in support of Sonopress's conditional cross-motion. They fall into two broad categories: (a) stylistic changes and technical corrections (e.g., the date when the parties entered into the Replication Agreement); and (b) material new allegations (e.g., that at the time MGM entered into the Replication Agreement, it already was a party to an existing, conflicting exclusive replication agreement that MGM failed to disclose).

We shall address only the substantive changes. In the course of doing so, we shall necessarily also briefly review the legal framework within which these new allegations fall. Since MGM states that "the basic premise of MGM's motion to dismiss" is that MGM did not breach the non-exclusive Replication Agreement "by entering into [exclusive] agreements with other DVD replicators" (MGM Cr. Mot. Opp. Br. at 2), we shall discuss that issue first.

> A. The Grant to a Third Party of an Exclusive Right to Replicate MGM Movies Breached Sonopress's World-Wide Non-Exclusive Replication Agreement

Sonopress's original complaint alleged that MGM breached the Replication Agreement by granting Cinram exclusive replication rights for "certain" countries in Western Europe. At that time, Sonopress did not specify more precisely the territory of Cinram's exclusive because the only information that Sonopress had was what Cinram disclosed in its press release. Since MGM subsequently revealed that Cinram's exclusive covers *all* of Western Europe, paragraph 22 of the proposed Amended Complaint now tracks MGM's admission. In addition, in paragraph 23 of the proposed Amended Complaint, Sonopress has pled the materiality of this breach of contract, by alleging that Western Europe is the most important market for Sonopress, a German company, and constituted approximately 96% of all of Sonopress's replication orders from MGM in 2005 and 2006. These newly alleged facts render absurd MGM's suggestion that the granting of the exclusive to Cinram is of little consequence since Sonopress still has the rest of the world as a territory.

Moreover, the proposed Amended Complaint pleads, for the first time, that MGM also breached the Replication Agreement by misrepresenting, when the parties entered into that Agreement, that MGM was not a party to any other replication agreements. *See*

paragraphs 31 through 34 of the proposed Amended Complaint and Section 20 of the Replication Agreement, in which MGM claimed that it had "the full right, power, legal capacity and authority to enter into this Agreement and to carry out the terms and conditions hereof" and that "the consent of no other person or entity is necessary for it to enter into this Agreement and/or perform the obligations required pursuant to the Agreement".

At this time Sonopress does not know the identity of the holders of those pre-existing exclusives or what territories the exclusives cover. In light of the fact that in 2005 and 2006 MGM did not place any replication orders with Sonopress for North America, one of MGM's most important markets, it is reasonable to infer that MGM may have contractually bound itself not only to exclude Sonopress from Western Europe, but also the United States and Canada. If that is the case, it is a travesty to have claimed to have granted Sonopress a "world-wide" territory.

MGM's contention that neither the Cinram exclusive nor these other still-unidentified exclusive contracts conflict with the Replication Agreement is based on a misreading of the applicable authorities. In *Silverman v. Carvel Corp.*, 8 A.D.3d 469, 778 N.Y.S.2d 515 (2d Dept. 2004), the complaint's deficiency was not that there is no inherent inconsistency between a simultaneous grant of both an exclusive and a non-exclusive right to do business in a territory, but rather that the plaintiff "pointed to no provision of the franchise agreement which would prohibit the distribution of Carvel products in supermarkets or convenience stores" and "did not plead the existence of a Carvel store ... selling Carvel products" within the quarter-mile territory to which the franchisee was granted an exclusive. Since *United Liquors, Inc. v. Carillon Importers,*

*Ltd.* 893 F.2d 1 (1st Cir. 1989) holds that it violates the rights of an exclusive distributor for another distributor to operate within the exclusive territory, the fact that neither Cinram nor the other exclusive replicators have, for whatever reason, chosen so far to seek to bar Sonopress from violating their exclusive rights, does not mean that they may not seek to do so in the future. Moreover, by granting these other replicators an exclusive, MGM has, *de facto*, reduced Sonopress's territory to only those countries not covered by their exclusives.

*Graphic Technology, Inc. v. Pitney Bowes Inc.,* 968 F. Supp. 602 (D. Kan. 1997) upheld, as actionable, the plaintiff's negligent misrepresentation claim arising out of defendant's failure to disclose the existence of a contract that was inconsistent with the grant to the plaintiff of the rights conveyed in the parties' agreement. Of course, MGM's similar failure to disclose that it was a party to one or more pre-existing exclusive replication agreements is precisely the basis for Sonopress's new claim for breach of Section 20 of the Replication Agreement.

MGM concedes that in *Board of Regents of the University of Nebraska v. BASF Corp.*, No. 4:04 CV 3365, 2006 WL 2583253 (D. Neb. Sept. 6, 2006) the court found that "a non-exclusive licensee could intervene in a declaratory judgment by an alleged exclusive licensee because the 'disposition of the action may as a practical matter impair or impede [the non-exclusive licensee's] ability to protect that interest'", but seeks to distinguish that case on the irrelevant ground that there "was no ruling on the actual merits" of the intervenor's claim. (MGM Reply Br. at fn. 1). MGM's motion to dismiss, and Sonopress's conditional cross-motion for leave to amend, similarly do not call upon

this Court to make, at this time, a "ruling on the actual merits" of Sonopress's breach of contract claims.

Finally, MGM acknowledges, as it must, that *Dresser-Rand Co. v. Virtual Automation Inc,* 361 F.3d 831 (5th Cir. 2004) "found that a world-wide exclusive contract could not be reconciled with a world-wide non-exclusive contract for the same technology". (MGM Reply Br. at 4). However, MGM contends that that case is nevertheless distinguishable because the exclusive replication agreements MGM has granted to others do not leave Sonopress without *any* territory. We submit that such a distinction at most goes to the issue of materiality, rather than whether a breach has in fact been duly alleged, and materiality is amply demonstrated by the proposed Amended Complaint's allegation that 96% of Sonopress's replication orders from MGM in 2005 and 2006 were for Western Europe, which is within Cinram's exclusive territory.

MGM's contention that its breach of Section 20 of the Replication Agreement is not "material" because Sonopress "had no complaints about the volume that it was replicating for MGM" in 2005 and 2006 (MGM Opp. Br. at 4) ignores the incontrovertible facts that - as the proposed Amended Complaint explains - the committed volume for those years was only 10,000,000 DVD units per year and MGM placed orders with Sonopress for substantially those amounts. Starting in 2007, however, the committed volume was to more than triple to an average of 33,000,000 DVD units per year. *See* proposed Amended Complaint ¶ 5. Consequently, the impact of a reduced territory would obviously be far more substantial.

In light of this legal framework, the proposed Amended Complaint more than meets the requirement of stating a cognizable claim for breach of contract. The proposed

pleading adds to the original complaint's allegations that the exclusive territory improperly granted to Cinram covers all of Western Europe, where approximately 96% of Sonopress's orders from MGM were destined in the first two years of the Replication Agreement, and that MGM also breached that Agreement by not disclosing the existence of pre-existing replication agreements that conflicted with the grant to Sonopress of world-wide replication rights.

      B.      Interpretation of the Replication Agreement

MGM also contends that in ruling on whether the proposed Amended Complaint states a claim for relief, this Court should disregard any parol evidence. We disagree, since the disputed terms are far from clear and unambiguous. At page 12 of Sonopress's Brief in Opposition to MGM's Motion to Dismiss, we discuss the leading authorities in this Circuit that hold that it is not appropriate for a district court to resolve, on a motion to dismiss, material questions of contract interpretation. However, if this Court should nevertheless consider it necessary to address interpretation issues (at least for the limited purpose of determining whether allowing the proposed Amended Complaint to be filed would be "futile"), we point out that the proposed Amended Complaint adds material allegations that directly bear on the intent of the parties.

In paragraph 19 of the proposed Amended Complaint, Sonopress has alleged (and MGM does not dispute) that MGM drafted the provisions that are at the center of the parties' dispute. To the extent that the provisions concerning the "Guaranteed Quantity", the "Shortfall" and "Indemnification" are susceptible of more than one reasonable interpretation, they should therefore be construed against the interests of MGM. *Restatement (Second) of Contracts* §206 (1981).

Moreover, in paragraph 20 of the proposed Amended Complaint, Sonopress has pled that the Amendment of the DSA, which was entered into contemporaneously with the Replication Agreement, stated that the DSA would not terminate until "MGM and Sonopress GmbH shall have entered into a nonexclusive world-wide replication agreement with a volume commitment of no less than 120 million discs over a term of no more than 5 years starting January 1, 2005." *See* Exhibit A to Declaration of Lee Fink in Support of Defendant's Motion to Dismiss, at ¶2. This provision shows that contrary to MGM's contention that it was only Sonopress's understanding that MGM was committing to ordering a minimum of 120,000,000 DVD units from Sonopress, MGM expressly represented to arvato that it would place such orders with Sonopress.

MGM's contention that the Shortfall provision constitutes an "option", rather than "liquidated damages", (i) is based on the false premise that Sonopress has claimed that the Shortfall formula was intended to cover Sonopress's losses (rather than arvato distribution's) if MGM failed to order the Guaranteed Quantity and (ii) is but a variant on MGM's false assumption that the terms of the Replication Agreement are clear and unambiguous. *See* the discussion of this point in Section B, *supra*, as well as in Section C below. *See also* Paragraph 21 of the Amended Complaint in which Sonopress alleges that "The 9 million Euro payment was not intended to compensate Sonopress for its damages if MGM reneged on its commitment to order a minimum of 120,000,000 DVD units...."

Ironically, even the issue of whether the Replication Agreement constitutes a "novation", which MGM has raised for the first time in its reply and opposition motion papers, is itself dependent on the intent of the parties and therefore can not properly be

decided on the pleadings. *See May Dept. Stores Co. v. International Leasing Corp., Inc.*, 1 F.3d 138, 140 (2d Cir. 1993) (the determination of whether an agreement is a novation must "be based on the intentions of the parties – a determination that is best made by the *fact finder*") (Emphasis added).

      C.    The Existence of the Parties' Conflicting Interpretations of the Replication Agreement's Terms Also Evidences the Need for a Declaratory Judgment

In paragraphs 49 and 50 of the proposed Amended Complaint, Sonopress now alleges that "there is a present substantial disagreement between the parties as to whether, as Sonopress contends, MGM has an obligation to purchase from Sonopress the Guaranteed Quantity" of 120 million DVD units or whether, as MGM contends, MGM has the "option" not to purchase any DVD units between now and December 31, 2010..." Sonopress also now alleges there is "a present substantial disagreement between the parties as to whether there is a "cap" of 0.09 Euro per DVD disc on what damages Sonopress can recover" and "whether the Agreement's indemnification provision is limited to third-party claims or whether it also applies to direct claims by Sonopress against MGM for breach of contract." Sonopress now further alleges that this absence of clarity as to the parties' respective rights and obligations is causing it present injury in that it "can not determine how to allocate its replication capacity among its customers, including MGM, and whether it needs to make capital expenditures to meet customer demand ..."

It is, of course, precisely the purpose of the declaratory judgment process to address contractual disputes of this type. *See* the cases collected at pages 17-19 of Sonopress's Brief in Opposition to MGM's Motion to Dismiss.

## **CONCLUSION**

Consequently, far from being "futile", the proposed Amended Complaint successfully addresses every purported "deficiency" MGM has alleged with respect to Sonopress's original complaint. Therefore, in the event that the Court finds that any of the counts of the current complaint fail to state a claim, then the Court should grant Sonopress's conditional cross-motion to amend, for the reasons set forth herein and in Sonopress's principal memorandum of law in support of the cross-motion.

Dated: August 16, 2007

                ALSTON & BIRD LLP

                By_____
                    Alan Kanzer (AK 5839)
                    Amber C. Wessels (AW 2322)
                    90 Park Avenue
                    New York, New York 10016
                    (212) 210-9400

                    *Attorneys for Plaintiff*
                    *Sonopress GmbH*