# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------

SONOPRESS GmbH,

           **Plaintiff,**

       v.

METRO-GOLDWYN-MAYER HOME
ENTERTAINMENT LLC,
           **Defendant.**

--------------------------------------

Case No. 07 Civ 3752 (LTS)


**AMENDED JOINT PRELIMINARY
PRE-TRIAL STATEMENT**


Pursuant to Federal Rules of Civil Procedure 26(f) and the Initial Conference Order of this Court dated May 22, 2007, Plaintiff Sonopress GmbH ("Plaintiff" or "Sonopress") and Defendant Metro-Goldwyn-Mayer Home Entertainment LLC ("Defendant" of "MGM") jointly submit this Preliminary Pre-Trial Statement. Because this Preliminary Pre-Trial Statement is being filed prior to the filing of an answer, the exchange of Initial Disclosures and discovery, the parties' knowledge of the legal issues and facts is necessarily incomplete. The parties therefore respectfully reserve the right to supplement and amend this Statement at a later date.

The Nature of this Action

Plaintiff has sued for breach and anticipatory repudiation of, indemnification under, and a declaratory judgment regarding, an agreement between the parties concerning the replication by Plaintiff of DVDs from movies owned by Defendant.

<u>The Basis of the Court's Subject-Matter Jurisdiction</u>

Jurisdiction arises under 28 U.S.C. § 1332. Plaintiff is a German GmbH, a corporation without shares, and has its principal place of business in Germany. Defendant is a Delaware limited liability company and has its principal place of business in California. The amount in dispute exceeds $75,000, exclusive of interest and costs.

<u>Material Uncontested or Admitted Facts</u>

1.  Sonopress is a German GmbH (a corporation without shares) with its principal place of business and headquarters located in Gütersloh, Federal Republic of Germany ("Germany").

2.  Sonopress is part of the Bertelsmann group of companies, which includes Random House (the leading global book publisher), Sony-BMG (a major music label in which Bertelsmann and Sony are equal joint venturers), RTL (the largest European broadcaster), and arvato AG (a leading provider of distribution, warehousing, printing, storage media manufacturing and various other services).

3.  MGM, a subsidiary of Metro-Goldwyn-Mayer Studios Inc., is a Delaware limited liability company with its principal place of business in Los Angeles, California. It controls the world's largest library of modern films, comprising more than 4,000 titles, and over 10,400 episodes of television programming.

4.  MGM has consented to the jurisdiction of this Court.

5.  The parties have consented to the venue of this District.

6.  On or about August 12, 2004, Sonopress's affiliate, arvato distribution GmbH ("arvato distribution"), entered into a Distribution Services Agreement (the "DSA") with MGM, pursuant to which arvato distribution was to provide distribution

services to MGM on an exclusive basis in France, the United Kingdom and Germany, through December 31, 2006.

7. Sony Corporation, together with Comcast and a consortium of private equity investors (collectively, "Sony"), bought MGM's parent company in a deal announced in September 2004 and finalized in April 2005.

8. MGM and Sony decided to move distribution under the DSA from arvato distribution to Sony Pictures Entertainment ("SPE"), an affiliate of Sony.

9. On May 3, 2005, MGM sent a memorandum to Sonopress discussing three alternative proposals for the early termination of the DSA.

10. MGM subsequently forwarded to Sonopress a May 11, 2005 internal memorandum that further addressed this subject.

11. Sonopress and MGM entered into a non-exclusive Replication Agreement (the "Agreement") dated as of January 1, 2005.

12. On or about the date that MGM and Sonopress entered into the Agreement, MGM and arvato executed a First Amendment to the DSA (the "Amendment").

13. On January 17, 2007, the parent company of Cinram International Inc. ("Cinram") issued a press release announcing a multi-year European replication agreement with MGM. According to the release, Cinram was to "become the exclusive manufacturer of DVDs for MGM in the major Western European countries under a new agreement, effective in the first quarter of 2007." Cinram also announced that its "exclusive" for Western Europe is for a "multi-year" term.

LEGAL02/30485220v1

14.     On January 26, 2007, MGM instructed Sonopress via email to allow

Cinram "access to all the materials needed to fulfill replication and

distribution of the MGM titles in Europe."

15.     On February 7, 2007, MGM sent Sonopress a follow-up letter requesting

Sonopress's "assistance in facilitating smooth transition of MGM's replication in

Europe to Cinram."

Uncontested Legal Issues

1.     The Court has subject-matter jurisdiction.

2.     The Court has personal jurisdiction over MGM.

3.     Venue lies in this District.

4.     New York law governs.

5.     The parties have waived a jury trial.

Legal Issues to be Decided by the Court

1.     Has MGM breached the replication agreement?

2.     Has MGM anticipatorily repudiated the replication agreement?

3.     Is Sonopress entitled to indemnification?

4.     Is Sonopress entitled to a declaratory judgment?

Statement of Material Disputed Facts

A.     Plaintiff's Statement

1.     Sonopress is a leading player in the business of replicating DVDs.

2.     The Replication Agreement constitutes a firm commitment by MGM to order from

Sonopress the replication and associated packaging, related services and materials

for a Guaranteed Quantity of 120,000,000 DVD units over five years, with the option to extend the Agreement for one additional year.

3.     MGM, in its May 3, 2005 memorandum to Sonopress, considered but rejected paying arvato distribution immediate cash compensation for the early termination of the DSA, noting that MGM had seen arvato distribution's estimated damages calculation of 14 million Euro and believed that an estimate between 7 and 9 million Euro was "more realistic."   MGM also considered but rejected the alternative of continuing to do business with arvato distribution.

4.     Instead, MGM chose – in order "to eliminate the compensation payment from NewCo/MGM to arvato [distribution]" – "to replace the balance of the commitment made by MGM to arvato [distribution] for distribution services by a **commitment** on manufacturing services made by NewCo/MGM to Sonopress."   MGM had previously agreed to order from Sonopress the replication of 10 million DVD units in each of 2005 and 2006. It now **committed** "to manufacture with Sonopress 100MM DVD units, in addition to the 10MM units **committed** for [each of] 2005 and 2006." (Emphases added.)

5.     As MGM recognized in its internal memorandum of May 11, 2005 – which was also shared with Sonopress – the pricing for the DVD units provided under the Agreement "includes a compensation element of 0.09 Euro per disc to offset the early termination costs of the distribution agreement with arvato [distribution]." The memorandum elsewhere characterized as "unlikely" the possibility that MGM would fail to order the committed number of DVD units by the end of 2009, and

LEGAL02/30485220v1

noted that "a mechanism remains to be agreed to should MGM fail to order 120 million" DVD units by then.

6.    The Agreement therefore provided a means for MGM to discount the damages payable to arvato distribution from 14 to 9 million Euro, and to repay the 9 million Euro in damages, 0.09 Euro per DVD unit at a time, starting after the delivery of the first 20 million DVD units. This 0.09 Euro per DVD unit was to be passed on by Sonopress to arvato distribution as compensation for the premature termination of the DSA.

7.    In the Agreement, MGM and Sonopress defined a "Guaranteed Quantity" of 120 million DVD units and agreed on a world-wide non-exclusive territory.

8.    The parties further agreed that MGM would, on a semi-annual basis, provide Sonopress with a rolling forecast of the anticipated number of DVD units to be replicated over the following twelve months.

9.    Pursuant to Exhibit A of the Agreement, which sets forth pricing for DVD units provided under the Agreement, Sonopress charges MGM for mastering, disc replication, softbox, assembly service, and print production. The prices per finished item provided are dependent on each of these factors, and range from 0.505 Euro to approximately 5.92 Euro.

10.    In addition, in the event that MGM, beginning in 2007, obtained bona fide lower bids from Sonopress's competitors, MGM agreed to submit those bids to Sonopress, and Sonopress agreed (within certain limitations) to lower its prices under the Agreement to match those bids. The Agreement did not provide that MGM could

- 6 -

abrogate its 120 million DVD unit "Guaranteed Quantity" commitment to take

advantage of bids from Sonopress's competitors.

11.    The Agreement assured that arvato distribution would receive the full 9 million

Euro DSA cancellation fee by providing that MGM would have to pay Sonopress

0.09 Euro for each DVD unit by which MGM fell short of ordering the Guaranteed

Quantity.  The only other provisions of the Agreement either expressly providing

for or limiting damages are: paragraph 15(b), which provides that MGM shall

indemnify Sonopress against all damages, losses and expenses, including legal fees,

arising from MGM's breach of the Agreement; and paragraph 15(d) of the

Agreement, which states, "in the absence of fraud and/or any other intentional or

willful misconduct by the other party, the other party's maximum liability for

damages arising out of this Agreement for any Contract Year shall not exceed

€500,000."

12.    MGM prepared the initial draft of the Agreement.  Most of the provisions that are at

issue in this litigation, including those pertaining to the "Guaranteed Quantity," the

"Shortfall" and "Indemnification," are substantially or entirely identical to the

initial MGM draft.  The Agreement does not modify in any manner the canon of

construction that provides that in the event a contract provision is ambiguous, it

should be construed against the interests of the draftsman.

13.    Paragraph 2 of the Amendment to the DSA (which was drafted by MGM's counsel)

provided:

Condition Precedent.  As a condition precedent to the early termination of
the … [DSA], MGM and Sonopress GmbH shall have entered into a
nonexclusive worldwide replication agreement with a **volume**

**commitment** of no less than **120 million** discs over a term of no more than 5 years starting January 1, 2005. (Emphasis added.)

14.    The purpose of the Amendment was to insure that arvato distribution received the agreed upon compensation of 9 million Euro for the premature termination of the DSA.  The 9 million Euro payment was not intended to compensate Sonopress for its damages if MGM reneged on its commitment to order a minimum of 120,000,000 DVD units.

15.    Approximately 96% of all the replication orders that MGM placed with Sonopress for DVDs in 2005 and 2006 were for Western Europe.

16.    MGM negotiated its contract with Cinram, a major competitor of Sonopress, without notice to Sonopress.  Sonopress only learned about that contract when it received its competitor's press release.

17.    MGM represented to Sonopress, in a February 7, 2007 letter, that "we are still working on the Forecasted Volume for the next 12 months and we will provide it to you as soon as possible."

18.    Sonopress continually asked MGM how it intended to fulfill its obligations under the Agreement and repeated its requests for MGM's required and overdue semi-annual forecast for the following twelve months.  In a meeting on or about February 13, 2007, MGM represented to Sonopress that it was still investigating ways to place orders with Sonopress.

19.    Despite MGM's repeated assurances that it wanted to continue to work with Sonopress, MGM simultaneously continued its requests to Sonopress to transfer all of the MGM DVD masters and associated assets in

- 8 -

Sonopress's archives to Cinram.  In addition, MGM did not send

Sonopress masters to any new releases other than "Texas Chainsaw

Massacre Two."

20.    Finally, after nearly two months of equivocation, MGM admitted in a

March 16, 2007 email that "at this point in time, the forecast capacity

needs for this year do not include **any** unit capacity for Sonopress."

(Emphasis added.)

21.    Thereafter, for approximately a six-week period, while MGM and

Sonopress arranged for an orderly transition, including the physical

transfer to Cinram of the thousands of MGM DVD masters and associated

assets in Sonopress's archives, MGM placed limited orders with

Sonopress for replication of titles from MGM's catalogs of previous

releases, but did not request that Sonopress replicate any of MGM's new

release titles.  As of April 27, 2007, MGM ceased all replication orders

from Sonopress.

22.    MGM has to date not come close to fulfilling its Guaranteed Quantity

obligations under the Agreement.  Now that MGM has directed that

Sonopress turn over to Cinram all MGM DVD masters and associated

assets – making it impossible for Sonopress to replicate any MGM DVDs

– and has admitted that it does not intend to order any DVD units from

Sonopress over the remainder of this year, it is clear that MGM has no

intention of ordering 120,000,000 DVD units from Sonopress.

LEGAL02/30485220v1

23.     In MGM's motion papers, it disclosed, for the first time, that "MGM had
        **exclusive** replication agreements in several territories at the time the
        parties entered into the Sonopress Agreement, including for Western
        Europe." (Emphasis added.)

24.     MGM represented to Sonopress, in the final paragraph of Section 20 of the
        Agreement, that MGM "(b) ... has the full right, power, legal capacity and
        authority to enter into this Agreement and to carry out the terms and
        conditions hereof, and (c) the consent of no other person or entity is
        necessary in order for it to enter into this Agreement and/or perform the
        obligations required pursuant to this Agreement."

25.     At the time that MGM and Sonopress entered into the Replication
        Agreement, MGM representatives never informed Sonopress that MGM
        was a party to exclusive replication agreements.

B.      Defendant's Statement

1.      At the time it entered into the Replication Agreement, Sonopress was on notice that
MGM had exclusive DVD replication agreements with other service providers for certain
territories that fell within Sonopress's non-exclusive territory.

2.      By entering into the amendment to the DSA and the Replication Agreement,
MGM's obligations to arvato under the DSA were extinguished.

3.      The parties jointly drafted the amendment to the DSA.

4.      The parties jointly drafted the Replication Agreement.

LEGAL02/30485220v1

5.      At the time they entered into the Replication Agreement, the parties understood that MGM had the right to enter into DVD replication agreements with other service providers, including exclusive agreements in various territories.

6.      At the time they entered into the Replication Agreement, the parties understood that MGM could place DVD replication orders with any other DVD replication service provider.

7.      At the time they entered into the Replication Agreement, the parties understood that MGM had the *option* to either order 120 million DVD units from Sonopress *or alternatively* pay the "Shortfall Amount" of €0.09 per DVD.

8.      MGM did not engage in any act of fraud or any other intentional or willful misconduct, and thus any liability on the part of MGM for breach of contract is limited under paragraph 15(c) of the Replication Agreement.

9.      MGM did not, and does not, intend to repudiate the Replication Agreement.

10.     MGM continues to place DVD replication orders with Sonopress.

The Legal Basis for Plaintiff's Claims

A.     Breach of Contract

Sonopress is suing for breach of a written replication agreement. This claim is not based on a statute. The thrust of the claim is that MGM committed to ordering from Sonopress a minimum of 120,000,000 DVD units over a five year period, but gave notice earlier this year – after entering into an exclusive replication contract with Cinram, a major competitor of Sonopress – that MGM would order no further DVDs from Sonopress in 2007. The "exclusive" MGM granted Cinram for Western Europe (Sonopress's major market) is inconsistent with, and a breach of, Sonopress's world-wide "territory." Sonopress only recently learned, through a disclosure made in MGM's motion to dismiss,

- 11 -

that MGM also breached the Agreement by misrepresenting that it was not a party to any other exclusive replication agreements. Sonopress believes its damages are in the tens of millions of dollars.

The principal cases on which Sonopress relies are:

- *Dresser-Rand Co., v. Virtual Automation Inc.*, 361 F.3d 831 (5th Cir. 2001)

- *Graphic Technology, Inc. v. Pitney Bowes Inc.*, 968 F. Supp. 602 (D. Kan. 1997)

- *United Liquors, Inc. v. Carillon Importers, Ltd.*, 893 F.2d 1 (1st Cir. 1989)

- *Fen Hin Chon Enterprises, Ltd. v. Porelon, Inc.*, 874 F.2d 1107 (6th Cir. 1989)

- *Board of Regents of the University of Nebraska v. BASF*, 4:04cv3356, 2006 WL 2583253 (D. Neb. Sept. 2006)

- *Laurus Master Fund, Ltd. v. Veracom Int'l, Inc.*, No. 02-cv-5340, 2003 WL 21219791.

B.    <u>Anticipatory Repudiation</u>

MGM has manifested its intention not to perform the Agreement by: 1) stating that it did not intend to place a single order in 2007; 2) giving Sonopress a definite and final communication of its intention not to replicate 120 million DVD units pursuant to the Agreement; 3) entering into an exclusive multiyear agreement with Cinram in Western Europe, the situs of 96% of MGM's replication orders placed with Sonopress in 2005 and 2006; and 4) removing thousands of titles of MGM DVD masters and associated assets from Sonopress's possession, making it impossible for Sonopress to fulfill any new orders from MGM. MGM has thereby manifested its intent not to perform and has rendered Sonopress unable to perform under the Agreement.

While MGM has purported to "assure" Sonopress that it will fulfill its contractual obligations, its failure to provide adequate assurances constitutes a repudiation of the contract under Section 2-609 of New York's Uniform Commercial Code.

The principal cases on which Sonopress relies are:

- *Aetna Cas. And Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566 (2d Cir. 2005)

- *Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 747 N.Y.S.2d 468 (App. Div. 1st Dept. 2002)

- *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.,* 92 N.Y.2d 458 (1998)

- *Hornell Brewing Co., Inc.  v. Spry*, 664 N.Y.S.2d 698 (Sup. Ct. 1997)

C.    Indemnification

In paragraph 15(b) of the Agreement, MGM broadly agrees to indemnify Sonopress against "any and all costs, claims, causes of action, suits, judgments, harm, damages, liabilities, losses and expenses (including, without limitation, all reasonable legal fees and disbursements)" arising from MGM's "breach of, alleged breach of, or non-compliance with any of the provisions of this Agreement." Sonopress faces costs, damages, losses and expenses (including legal fees and costs) arising from MGM's breach of several provisions of the Agreement.  Sonopress believes its damages are in the tens of millions of dollars.

D.    Declaratory Judgment

This Court has jurisdiction to grant Sonopress a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

The basis for Sonopress's claim is the parties have opposing views on issues critical to the parties' legal relations.  For example, MGM and Sonopress sharply dispute whether, according to the terms of the Agreement, MGM is required to order 120 million DVD

- 13 -

units. In addition, MGM contends that it is entitled to pay only 0.09 Euro per unit as *satisfaction of its duties* under the Agreement, while Sonopress contends that MGM must pay *damages*, including but not limited to 0.09 Euro per unit, *as a consequence of breaching the Agreement*. This Court's determination of these issues is necessary to clarify and settle these legal relations or to terminate and afford relief from the uncertainty, insecurity, and controversy caused by the Agreement's ambiguity.

The principal cases on which Sonopress relies are:

- *Golden v. Zwickler*, 394 U.S. 103 (1969)

- *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734 (2d Cir. 1992)

- *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969)

- *Kidder Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991)

- *Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, No. 06-cv-7672, 2007 WL 163111 (S.D.N.Y. Jan. 22, 2007)

- *Clalit Health Services v. Israel Humanitarian Foundation*, No. 02-cv-6552, 2003 WL 22251329 (S.D.N.Y. Sept. 30, 2003)

- *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118 (S.D.N.Y. 1997)

## The Legal Basis for Defendant's Defenses

Sonopress's Complaint is not yet at issue, as MGM has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Sonopress's Complaint in its entirety because for failure to state a claim upon which relief may be granted. Defendant will assert affirmative defenses when, and if, it is required to answer. The legal basis for Defendant's position as to Plaintiff's claims is set forth below:

A.    Breach of Contract

MGM's defense is based on the fundamental principle that MGM cannot be liable for a breach of a *non-exclusive* contract based on its decision to enter into a contract with another service provider.  This would improperly transform the contract into an exclusive agreement, for which neither Sonopress nor MGM ever bargained.  Additionally, the facts will show that Sonopress was aware, at the time that it entered into Replication Agreement, that MGM had exclusive replication agreements with other service providers in various territories throughout the world.  Thus, it cannot claim that MGM breached its *non-exclusive* agreement with Sonopress by entering into an exclusive contract with another service provider .

Moreover, MGM did not (and could not) breach the contract based on the facts alleged by Sonopress because the unambiguous language of the contract states that MGM has the *option* to order either 120 million DVD units from Sonopress or to pay a "Shortfall Amount" of €0.09 per each DVD unit less than 120 million that it orders from Sonopress. MGM's election of one option or another is not a breach of contract, but rather an alternative means of performance.

The principal cases on which MGM will rely are:

- *Silverman v. Carvel Corp.*, 8 A.D.3d 469, 778 N.Y.S.2d 515 (2004)

- *Bradford v. New York Times Co.*, 501 F.2d 51, 56 (2d Cir. 1974)

- *Hasbrouck v. Van Winkle*, 261 A.D. 679, 682, 27 N.Y.S.2d 72, 76 (1941)

- *Northwestern Mut. Life Ins. Co. v. Uniondale Realty Associates*, 11 Misc.3d 980, 816 N.Y.S.2d 831 (2006)

LEGAL02/30485220v1

- *Integrated Micro Systems, Inc. v. NEC Home Electronics (USA), Inc.*, 174 Ga. App. 197, 329 S.E.2d 554 (1985)

- *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis.2d 568, 431 N.W.2d 721 (1988)

- *Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999)

- *Payne v. McDonald's Corp.*, 957 F. Supp. 749 (D.Md. 1997)

- *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831 (5th Cir. 2001)

B.    Anticipatory Repudiation

MGM has never repudiated the Replication Agreement.  The acts of which Sonopress complains do not constitaute a breach of the Replication Agreement.  Moreover, even if Sonopress were correct about the interpretation of the Replication Agreement, MGM has until December 31, 2009, to fulfill its obligations under the Replication Agreement, and has never given to Sonopress an indication that it will not perform by that date.  Quite the contrary. MGM has repeatedly assured Sonopress that it will perform its obligations under the Replication Agreement, and continues to place DVD replication orders with Sonopress.

The principal cases on which MGM will rely are:

- *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

- *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*., 92 N.Y.2d 458, 462, 682 N.Y.S.2d 664, 667 (1998).

LEGAL02/30485220v1

C.    Indemnification

Sonopress's claim for indemnification is baseless. It is not seeking to be indemnified against any claim made by third parties for damages, but rather seeking its own attorneys fees in this litigation to enforce the agreement. It is thus improperly attempting to transform the indemnification provision into an attorneys fees provision.

The principal cases on which MGM will rely are:

- *McDermott v. City of New York*, 50 N.Y.2d 211, 218, 428 N.Y.S.2d 643, 647 n.4 (1980)

- *Restatement (First) of Restitution* § 76.

D.    Declaratory Judgment

There is no substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The failure of Sonopress's breach of contract claims is fatal to its claim for declaratory relief. MGM's performance under the Sonopress Agreement is not due until at least December 31, 2009 (and may be extended for a further year at MGM's option). Any declaration of the parties' rights under the Sonopress Agreement clearly would be an improper advisory opinion, and should therefore be denied.

The principal cases on which MGM will rely are:

- *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991)

- *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959-60, 22 L.Ed.2d 113 (1969)

- 17 -

E.    MGM's Affirmative Defenses

As set forth above, MGM has filed a motion to dismiss Sonopress's Complaint for failure to state a claim, and is awaiting the Court's ruling on that motion. Should MGM be required to answer the Complaint, it will assert various affirmative defenses at that time, including that Sonopress's damages are limited under the terms of the Replication Agreement.

The Measure and Burden of Proof

The measure of proof is the preponderance of the evidence. Plaintiff has the burden of proof on its four causes of action. Defendant has the burden of proof on any affirmative defenses or counterclaims it may assert.

Amendments to Pleadings; Addition or Substitution of Parties

Plaintiff has filed a conditional cross-motion for leave to amend its complaint if the Court grants Defendant's motion to dismiss. Defendant has opposed Plaintiff's conditional motion and contends any dismissal should be with prejudice. Plaintiff reserves the right to seek leave to amend after Defendant answers Plaintiff's complaint or amended complaint.

The parties do not presently anticipate any need to add or substitute parties

Whether the Parties Consent to Trial by the Magistrate Judge

The parties do not consent.

Initial Disclosures

The parties shall make all non-documentary initial disclosures within 14 days after the initial Pre-Trial Conference. All document discovery shall take place in accordance with Rule 34 of the Federal Rules of Civil Procedure.

Subjects for Disclosure; Proposed Cut-Off Date

Discovery will be needed as to the background, negotiation and provisions of the DSA and the Agreement, MGM's contracts with other replicators, including Cinram, the parties' performance under the Agreement and the damages Sonopress has incurred.

Fact discovery should be completed by February 28, 2008.

Expert Discovery; Proposed Deadline

Expert evidence will be required as to industry practice and damages.

Expert discovery should be completed two months after the cut-off date for fact discovery.

Requested Changes to Limitations on Discovery

**Plaintiff's position:**

Each party should be permitted to take one two-day Rule 30(b)(6) deposition of the opposing party and twelve depositions of directors, officers or employees of the opposing party, six of which may be for two days in length. In addition, each party may take a two-day Rule 30(b)(6) deposition of up to three non-party witnesses and up to ten additional depositions of directors, officers and employees of non-parties, five of which may be for two days in length. Cross-examination of a witness noticed by the opposing party shall not count against the number of depositions the cross-examining party may conduct.

**Defendant's position:**

The case is a fairly straight-forward breach of contract dispute which falls within the core of the limitations prescribed by the Rules. Defendant does not believe that it is necessary to vary from those limitations . If the parties' disclosures or discovery show a compelling need for additional depositions, the parties may agree to modify those limitations at some later date.

LEGAL02/30485220v1

Settlement

Prior to the commencement of the action, the parties engaged in unsuccessful settlement discussions. The parties are prepared to engage in further settlement discussions with the assistance of a court-designated mediator, including a Magistrate Judge.

Trial

The case is to be tried without a jury. Each party expects to take 5 trial days to present its case.

Additional Orders

The parties request the entry of a Protective Order. The parties have exchanged drafts of proposed Protective Orders and anticipate that they may be able to submit a stipulated Protective Order for the Court's signature during the week of August 27, 2007.

Dated: August 24, 2007

By _____
    Alan Kanzer (AK 5839)
    Amber C. Wessels (AW 2322)
    ALSTON & BIRD LLP
    90 Park Avenue
    New York, New York 10016
    (212) 210-9400
    *Attorneys for Plaintiff*

By _____
    Daniel M. Petrocelli (DP-1467) *(pro hac vice)*
    Claudia Ray (CR-4132)
    Lee K. Fink (LF-5489) *(pro hac vice)*
    O'MELVENY & MYERS LLP
    Times Square Tower, 7 Times Square
    New York, New York 10036
    (212) 326-2000
    *Attorneys for Defendant*

- 20 -